IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARRIE LLOYD,[1] | § | |
| | § | No. 276, 2025 |
| Respondent Below, Appellant, | § | |
| | § | Court Below–the Family Court |
| v. | § | of the State of Delaware |
| | § | |
| DEPARTMENT OF SERVICES | § | File Nos. 24-04-01TN |
| FOR CHILDREN, YOUTH, AND | § | CN12-03528 |
| THEIR FAMILIES, | § | |
| | § | Petition Nos. 24-07645 |
| Petitioner Below, Appellee. | § | 23-04196 |
| | § | |

Submitted: January 28, 2026
Decided: February 27, 2026

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

1. Appellant Carrie Lloyd ("Mother") appeals the Family Court's decision to terminate her parental rights in her children, J.L. and J.R. Mother argues that the court committed legal error in two ways. First, Mother contends that the court erred when it found that she did not adequately plan for her children under 13 *Del. C.* § 1103(a)(5). Second, Mother argues that the court erred in refusing to consider a non-

---

[1] The Court previously assigned a pseudonym to Appellant under Supreme Court Rule 7(d).

relative's guardianship petition for one of her children before terminating her parental rights. We address each argument in turn below.

2. Under her first argument, Mother claims the court committed error when it: (1) found that she did not adequately plan for her children after she had "substantially completed" her case plan; (2) violated her Fifth Amendment and due process rights by requiring her to admit that the children's father physically and verbally abused them; (3) determined without expert testimony that Mother's denial of the abuse was harmful to the children; and (4) terminated her parental rights in the children without also taking custody of her newborn child.[2] We affirm on the basis of the Family Court's opinion as to Mother's first claim.[3] Mother waived her third claim by not making a substantive argument on appeal.[4] Mother's second and fourth claims are also waived because she did not raise them with the Family Court

---

[2] Mother's Corrected Opening Br. 13-21 (Oct. 23, 2025) [hereinafter "Opening Br."].

[3] *See* Opening Br., Ex. A (Upon a Petition for Termination & Transfer of Parental Rights dated June 2, 2025, at 22) (relying on *Powell v. Division of Family Services*, which found the relevant inquiry not whether the mother "substantially completed" her case plan, but whether the "conditions that led to the child's placement . . . continue to exist" (citing *Powell v. Div. of Fam. Servs.*, 12 A.3d 1155, 2011 WL 252950, at *2 (Del. 2011) (TABLE) (citation omitted))).

[4] Opening Br. 19 (claiming – in one sentence under a different argument's section heading – that "professional testimony" was required for the court to find that the children were harmed by Mother's continuous denial of the father's abuse of Mother and the children). Mother did not file a reply brief in this matter.

and, even if she had, they are not persuasive.[5]  We therefore affirm the Family Court's holding regarding Mother's failure to plan.

3.    Under her second argument on appeal, Mother asserts that the court was required to consider a non-relative's guardianship petition for J.R. before terminating her parental rights.  The termination hearing spanned two days.  The court held the first hearing on February 27, 2025, and the final hearing on May 2, 2025.[6]  The non-relative filed the petition five business days before the final

---

[5] First, Mother asserts that the court's decision violated her Fifth Amendment right against self-incrimination and her right to procedural due process.  Opening Br. 18–19.  Mother cannot assert a Fifth Amendment right on behalf of the father.  *See United States v. Johnson*, 165 F.2d 42, 50 (3d Cir. 1947) ("The privilege is personal and it is clear that unless the party, himself, is being called upon to incriminate himself the fact that someone else may be incriminated is not sufficient to exclude evidence."). And even if we construed this Fifth Amendment argument as advancing Mother's right against self-incrimination, we have held that although parents have a right not to incriminate themselves, they do "not have the right to avoid the consequences of [providing] no explanation for [a child's] injuries." *Sierra v. DSCYF*, 238 A.3d 142, 159 (Del. 2020).

Next, Mother asserts that the court violated her due process rights by adding a requirement to her case plan that she admit to the father's abuse.  Opening Br. 18–19.  The court incorporated the case plan into an order.  A35 (Disp. Hr'g Order dated May 10, 2023, at 3).  We find no error, as the court possesses the authority to amend its own orders. 13 *Del. C.* § 2503(a) ("The Family Court shall have jurisdiction over proceedings under this chapter to grant, modify and/or terminate DSCYF custody orders."); 13 *Del. C.* § 2513(b) (a "DSCYF custody order may be modified at any time. . . .").  Last, we have previously held that Mother's fourth claim – that success in caring for her newborn is evidence that she has cared for her other children – is misguided.  *See Taylor v. Div. of Fam. Servs.*, 994 A.2d 745, 2010 WL 2163906, at *2 (Del. 2010) (TABLE) ("Nor does the Court agree with [mother] that her current success in caring for one child at home . . . demonstrate[s] to any appreciable degree that she has the ability to care for [the child subject to the petition] now or in the foreseeable future.").

[6] Opening Br. 22–24.

3

hearing.[7]  Neither the State nor Office of the Child Advocate ("OCA") were served with the guardianship petition.[8]

4.      We hold that Mother waived her second argument by not presenting a substantive argument on appeal.[9]  Mother does not assert a legal basis for this argument, nor does she explain how the court abused its discretion in refusing to consider a petition not properly before it.  Without explanation, Mother cites to *Clark v. Division of Family Services* and *Ralston v. DSCYF*.[10]  We conclude that these two cases are not relevant here.

5.      But even if Mother had made a substantive argument, it would not prevail.  The Family Court acted within its discretion when it decided to not consider

---

[7] *See* 13 *Del. C.* § 2302(16) ("'Relative' means any sibling, grandparent, uncle, aunt, first cousin, first cousin once removed, great-grandparent, grandaunt or granduncle, half sibling, stepparent, stepsibling, step-aunt or step-uncle, or step-grandparent of the child who is the subject of a guardianship petition.").

[8] A982 (TPR Hr'g Tr. dated May 2, 2025, at 107:1–12 [hereinafter "May TPR Tr."]).

[9] *In re COVID-Related Restrictions on Religious Servs.*, 326 A.3d 626, 643 (Del. 2024) ("Nowhere in their opening brief do Appellants either identify or present an argument on the issue . . . in the manner that is required by the Rules of this Court. 'This Court has held that the appealing party's opening brief must fully state the grounds for appeal, as well as the arguments and supporting authorities on each issue or claim of reversible error.' '[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.'" (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (other citations omitted))).

[10] Opening Br. 23–24 (citing *Clark v. Div. of Fam. Servs.*, 975 A.2d 813, 821 (Del. 2009) (requiring the Family Court to implicitly consider a guardianship petition in its best-interests-of-the-child analysis when family members had voluntarily stayed their guardianship petition pending the court's decision on termination of parental rights), and *Ralston v. DSCYF*, 308 A.3d 159–62 (Del. 2023) (holding that the father's due process rights were not violated when the court refused to hear a guardianship petition before terminating his parental rights)).

the late-filed guardianship petition.[11]  Delaware law requires that the Family Court issue a decision on a petition to terminate parental rights within thirty days from the final hearing.[12]  For a guardianship petition, the court must hold a hearing and then issue its decision within forty-five days.[13]  Additionally, when a non-relative has filed the guardianship petition, the Department of Services for Children, Youth, and their Families must assess the proposed guardian and then prepare and submit a report to the court at least one week before the guardianship hearing.[14]  Here, to consider the guardianship petition, the Family Court would have needed to stay the final termination hearing, conduct the statutory guardianship process, and then reschedule the final termination hearing.  Because the non-relative waited until five days before the final termination hearing to file her guardianship petition—despite having two months between the initial and final termination hearings—we conclude that the court did not exceed its discretion in refusing to consider the petition.

---

[11] *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1238 (Del. 2012) ("Trial judges are vested with the discretion to resolve scheduling matters and to control their own docket.").

[12] 13 *Del. C.* § 1108(b)(2).

[13] 13 *Del. C.* §§ 2326, 2355, 1107(a).  A hearing was especially necessary because the petitioner seeking guardianship of J.R. had previously served as a foster parent of the children for one year.  She lost her foster privileges when she refused to abide by J.L.'s safety plan and allowed her to attend a birthday party unsupervised where J.L. inappropriately touched another child.  A966–67, A969 (May TPR Tr. 91:16–92:17, 94:3–9).

[14] 13 *Del. C.* §§ 2324A(a), 2354.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice